IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TRANSGUARD INSURANCE COMPANY :
OF AMERICA, INC., :
: Civil Action No. 05-cv-538
            Plaintiff, :
:
      v. :
:
MICHAEL HINCHEY and SHARON HINCHEY,: JUDGE CONABOY
his wife, :
:
            Defendants. :
_____

MEMORANDUM and ORDER

Before the Court are Transguard Insurance Company's
("Plaintiff") and Michael and Sharon Hinchey's ("Defendants")
cross-motions for Summary Judgment.  Plaintiff sought declaratory
judgment against Defendants in its Complaint, (Doc. 1).
Subsequently, Defendants filed a Motion to Dismiss, (Doc. 9).  This
Court converted the pending matters to cross motions for Summary
Judgment by order on June 23, 2005.  (Doc. 18).

The motions have been fully briefed and are now ripe for
disposition.  Based on the discussion below, Defendants' Motion for
Summary Judgment is granted in part and denied in part.
Plaintiff's Motion for Summary Judgment is denied.

I.    FACTUAL BACKGROUND[1]

On December 21, 2003, Defendant Michael Hinchey was involved
in an automobile accident in which he suffered personal injury.

_____

[1] The following facts are primarily derived from Plaintiff's
Brief in Support of its Complaint for Declaratory Judgment, (Doc.
7).

Defendant is employed by Matheson Warehouse Co., Inc. and the vehicle he was operating at the time of the accident was owned by Matheson.  Plaintiff issued a Commercial Auto Policy to Matheson and the vehicle Defendant was driving was included in the Schedule of Owned Vehicles covered by the policy.  (Plaintiff's Exhibit B).

Following the accident, Defendant pursued a claim against the driver of the other vehicle who caused the accident.  The owner of the other vehicle was insured by Allstate Insurance Company. Defendant settled with the other driver's carriers for  the policy limits, which were $100,000.  Following the settlement, Defendant notified Plaintiff that he intended to pursue an underinsured ("UIM")  motorist claim.

The UIM Endorsement on the Commercial Policy Plaintiff issued to Matheson states that the UIM Policy limits are $500,000 per accident.  Therefore, according to Plaintiff, Defendants' recovery is limited to $500,000.

Here, Defendants seeks to stack the UIM benefits of eight "personal use" vehicles covered within Transguard's policy.[2] Furthermore, Defendants claim that the amount of UIM coverage is one million dollars, not five hundred thousand.  Defendants' position is based on their claim that the underinsured motorist

---

[2] Admittedly, it is curious to this Court as to how vehicles are categorized within the policy.  However, it appears that there is agreement between the parties that eight vehicles fit into the "personal use" category.

benefits must equal the one million dollar liability benefits. Therefore, if allowed to stack benefits, Defendants seek eight million dollars from Plaintiff.

II.   PROCEDURAL BACKGROUND

On March 16, 2005, Plaintiff filed a Complaint for Declaratory Judgment.  (Doc. 1).  On May 16, 2005, Defendant filed a Motion to Dismiss.  (Doc. 9).  Following appropriate hearings, this Court converted the pending matters to cross motions for summary judgment by order on June 23, 2005.  (Doc. 18).

On September 21, 2005, Defendants re-filed their Motion for Summary Judgment.  (Doc. 21).  On October 21, 2005, Plaintiff filed a brief in opposition to Defendant's motion.  (Doc. 25).  On February 17, 2006, Defendants filed a Reply brief.  (Doc. 29).

III. DISCUSSION

A.   Summary Judgment Standard

In our analysis of this matter we keep in mind the various cases that direct us regarding summary judgment.  A motion for summary judgment can be a very powerful motion.  It is a legal method of totally resolving a case without a trial based on a review of pleadings and submissions of the parties.  Granting summary judgment is appropriate in cases where there are no significant facts in dispute.  Because of the finality of granting a summary judgment motion, we must carefully examine the case and supporting documents along with the submissions from the party who

3

hopes to keep his case alive.  Federal Rule 56 is a mechanism for "assess[ing] the proof in order to see whether there is a genuine need for trial."  Fed.R.Civ.P. 56(e) advisory committee's notes (amended 1963).

Summary judgment is somewhat controversial and can be seen as upsetting the precarious balance between expediency and the preservation of our Seventh Amendment[3] right to jury trial.  Thus, we are vigilant and careful not to use it to preclude a party's right to trial or as a vehicle to simply move the case more quickly through the judicial system.

We follow considerable guidance in determining whether summary judgment should be granted.  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Knabe v. Boury*, 114 F.3d 407, 410 n.4 (3d Cir. 1997)(*citing* Fed.R.Civ.P. 56(c)). "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  *Anderson v.*

---

[3] U.S. Const. Amend. VII provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the rights of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-8, 106 S.Ct. 2505 (1986) (emphasis in original).

These rules make it clear that in order for a moving party to prevail on a motion for summary judgment, the party must show two things: (a) that there is no genuine issue as to any material fact, and (b) that the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). This instructs us that a fact is "material" if proof of its existence or nonexistence would effect the outcome of the lawsuit under the law applicable to the case. <u>Id.</u> at 248; *Levendos v. Stern Entertainment Inc.*, 860 F.2d 1227, 1233 (3d Cir. 1988). We are further instructed that an issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Anderson*, 477 U.S. at 257; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986); *Hankins v. Temple University*, 829 F.2d 437, 440 (3d Cir. 1987); *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

Under this regimen that we follow, the Court is required to view the evidence in the light most favorable to the non-moving party. Consistent with this principle, the non-movant's evidence must be accepted as true and all reasonable inferences must be drawn in the non-movant's favor. *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990). However, the non-moving party may not rest on the bare allegations contained in

5

his or her pleadings.

The non-moving party is required by Federal Rule of Civil Procedure 56(e)[4] to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548 (1986). When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

B.   Defendant's Motion for Summary Judgment

In their Motion for Summary Judgment, Defendants seek the ability to stack underinsured motorist coverages pursuant to 75 Pa. C.S.A. Section 1738 and applicable law. (Doc. 22 at 4).

The issue of stacking is somewhat confusing and has been developing in Pennsylvania for the last several decades. Although it is settled that stacking is allowable under Pennsylvania's Motor

---

[4]   In relevant part, Rule 56(e) states:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

6

Vehicle Financial Responsibility Law, this case presents the finer issue of whether an officer of a named insured corporation may stack coverage when the corporation, not the individual officer, is listed as the "insured."

While the current case law provides little in the line of bright line rules, a look at the case law history will help us make better sense of the instant case.  The Supreme Court of Pennsylvania first addressed stacking in *Harleysville Mutual Casualty Co. v. Blumling*, 241 A.2d 112 (1968).  In *Harleysville*, the Court held that "where the loss exceeds the limits of one policy, the insured may proceed under other available policies up to their individual limits or to the amount of the actual loss." Id. at 115.  Ultimately, the Court concluded that prohibiting stacking of coverage would violate the intent of the uninsured motorist statute.   Id.

The relevant statutory language found in 75 Pa. C.S.A. § 1738, which became effective in 1990, provides:

Stacking of uninsured and underinsured benefits and option to waive (a) Limit for each vehicle.  When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which

7

the injured person is an insured.

(b) Waiver.  Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) More than one vehicle.  Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

1990 Pa. Legis. Serv. 23 (Purdon)(Act No. 1990-6).

In an effort to determine which claimants may stack coverage, later cases have gone on to categorize insureds into different "classes" based on their individual relationship to the policy.  In *Utica Mutual Ins. Co. v. Costrisciane*, 473 A.2d 1005 (1984), the Supreme Court of Pennsylvania stated that classifications are contained in most uninsured motorist policies, and have come to be described as "class one", "class two" and "class three" coverage. Id. at 1010.  In *Constrisciane*, the Court decided that decedent was a "class two" insured, or someone whose entitlement to coverage was

8

predicated on his occupation of the vehicle.  <u>Id.</u> at 1011.  The
Court stated that "[a] claimant whose coverage is solely a result
of membership in this class has not paid premiums, nor is he a
specifically intended beneficiary of the policy."  <u>Id.</u> at 1011.
Therefore, because there is no recognizable contractual
relationship with the insurer, a class two insured does not have a
"reasonable expectation" of multiple coverage.  <u>Id.</u>  The Supreme
Court expressly reserved "for another day the question of whether a
"class one" insured may stack under a fleet policy, and whether the
owner and/or officers of a corporation are 'class one' insureds
under a policy issued in the name of a corporation."[5]  <u>Id.</u> at 1011;
(footnote 4).

Plaintiff cites the *Contrisciane* Court's categorization of the
three classes in support of its position that Defendants are not
"class one" insureds.  (Doc. 7 at 8).  The Court stated that a
"class one" insured is "[t]he named insured and any designated
insured and, while residents of the same households, the spouse and
relatives of either."  <u>Id.</u> at 1010.  Based on this language,
Plaintiff claims that "it is clear that Mr. & Mrs. Hinchey are not

---

[5] According to Plaintiff, the rules established by the
Insurance Services Office, Inc., state that a 'fleet policy' is a
commercial auto policy which covers five (5) or more autos.  (Doc.
12-1 at 3; citing to the Affidavit of Susan Richardson, ¶ 2).
Additionally, Black's Law Dictionary defines "fleet insurance" as
"insurance that covers a number of vehicles owned by the same
entity."  Black's Law Dictionary (8th ed. 2004).

class one insureds.  They are not named on the declarations page of the policy and, therefore, do not come within the policy's definition of 'you.'" (Doc. 7 at 8).  However, Plaintiff's argument falls short because the Court in *Contrisciane* specifically avoided the question of who qualifies as a "class one" insured when a corporation is the named insured.  *Contrisciane*, 473 A.2d at 1011.

Defendants rely on the Superior Court of Pennsylvania's decision in *Miller v. Royal Insurance Co.*, 510 A.2d 1257 (1986), which seemed to answer the questions that remained after *Contrisciane*.  In *Miller*, while the claimant was driving an insured vehicle, there was an issue as to her status and whether or not she was a "class one" insured.  <u>Id.</u> at 1258.  Although the Court ultimately found that appellee's class was irrelevant because "fleet" policies may not be stacked, it seemed to indicate that corporate officers and their spouses, such as the corporate secretary's wife involved in that case, are "class one" insureds. <u>Id.</u> at 1258.  In *Miller*, the Superior Court referred to the lower court's determination that the appellee was a class one insured and stated, "[w]e agree, however, this classification becomes irrelevant in light of our determination that coverages under a fleet policy may not be stacked." <u>Id.</u>  The Court declined to elaborate on that determination and focused its opinion, instead, on the issue of stacking a fleet policy.  Later cases have interpreted the *Miller* opinion to classify corporate officers as

10

"class one" insureds.  See *Ober v. Aetna Casualty and Surety Co.*, 766 F.Supp. 342 (1991).  Citing public policy concerns, the Court stated that "to allow stacking [of fleet policies] would be to make premium costs prohibitively expensive and would not be within the reasonable expectations of the insurer and the employer-policyholder..."  Id. at 1259.

In support of its position that Defendants cannot stack the benefits of a fleet policy, Plaintiff cites to the Supreme Court of Pennsylvania's opinion in *Selected Risks Ins. Co. v. Thompson*, 552 A.2d 1382(1989).  Plaintiff cites to the Court's statement that "because the policy under which appellee sought coverage was a fleet policy with no explicit designation of insureds, appellee's entitlement to coverage was predicated on his occupation of the vehicle: a 'class two' status."  Id. at 1387.  The language cited by Plaintiff does little to illuminate the issue of stacking fleet policies.  Furthermore, the cited portion of the Court's decision does not appear to have any particular bearing on the instant case.

The insurance policy in *Thompson* involved a volunteer fire association, which was an unincorporated governmental entity.  Id. at 1382.  The policy was issued in the name of the fire association and there were no named individuals on the policy.  Id.  The Court stated that resolution of the matter would turn on whether the claimant was a "specifically intended beneficiary of the policy."  Id. at 1385.  Utilizing the three "class" categories outlined by

11

the Court in *Contrisciane*, the *Thompson* Court concluded that claimant was a "class two" insured and therefore, unable to stack under the fleet policy.  Id. at 1387.  Presumably, claimant would have been able to stack if the Court found him to be a specifically intended beneficiary, or a "class one" insured.  Therefore, the Court's decision in *Thompson* is not persuasive of Plaintiff's argument that Defendants may not stack because the Transguard policy is a fleet policy.  Plaintiff seems to concede this point by stating that the issue is "whether defendants are class one insureds and are therefore entitled to stack the limits of the Transguard fleet policy."  (Doc. 25 at 5).

In furtherance of its argument that Defendants are not class one insureds, Plaintiff argues that the Court's decision in *Miller* has been undercut by subsequent Superior Court decisions such as *Hunyady v. Aetna Life & Casualty*, 578 A.2d 1312 (1990).  In *Hunyady*, the Superior Court stated of its decision in *Miller* that it did not "make a specific determination as to whether the 'class one' designation applied to the claimant, wife of a corporate officer, who was driving a company car at the time of her accident. We found the classification to be irrelevant because we held coverages under a fleet policy could not be stacked, which is what the claimant sought."  Id. at 1314.  While this statement somewhat deflates the concept that corporate officers are automatically considered class-one insureds, the Court clearly stops short of

saying they are not.

In *Hunyady*, the appellant claimed she had a right to underinsured benefits because her husband, on the date of her accident, was vice-president of the company which granted him unlimited use of the company vehicle insured by appellee. Id. at 1312.  The Court ultimately avoided the question again by stating that the classification was "irrelevant in the instant case because appellant was not driving a company car, covered by the policy." Id.  Therefore, the Court stated that because the claimant was driving her personal automobile, owned by her, and the automobile was covered by a separate carrier, "we fail to see how the policy language could possibly have led appellant to believe she was covered by appellee for the accident in which she was involved." Id. at 1313.  Notably, as in *Miller*, the claimant in the instant case was driving an insured vehicle.

The issue of a corporation as the "named insured" was directly addressed by the Western District Court of Pennsylvania in *Ober v. Aetna Casualty and Surety Co.*, 766 F.Supp. 342 (1991).  In *Ober*, the claimant was president of the named insured corporation and sought to stack underinsured motorist benefits. Id. at 343.  The Court held that the claimant could stack coverage despite the fact that the corporation, and not an individual, was the named insured. Id. at 345.  The Court, citing to the Superior Court's decision in *Miller*, stated that it would be "absurd to believe that one would

13

insure the corporation against bodily injury in an uninsured
motorist policy.  The intended beneficiaries of such policy are at
minimum the officers and directors of the corporation, whose
coverage is not 'solely the result' of membership in a class."  Id.

Plaintiff argues that the precedential value of both *Miller*
and *Ober* has been called into doubt by subsequent case law.  (Doc.
25 at 6,7,& 10).  In pursuit of this argument, Plaintiff cites the
Middle District Court's decision in *United States Fidelity &*
*Guaranty Co. v. Tierney Associates, Inc.*, 213 F.Supp.2d 468(2002).
In *Tierney*, the claimant was a corporate secretary who was driving
a vehicle which was not covered by the defendant insurer at the
time of the accident.  Id. at 469.  The corporation was the named
insured on the policy and the claimant argued that she should be
able to stack coverage because of her status as a corporate
officer.  Id.  The Court in *Tierney* looked to the language of the
policy in order to distinguish between a named individual and a
named corporation in a policy declaration.  The Court stated that
"where it is clear that the term "you" refers to a corporate
entity, a policy term extending UIM coverage to "you or any family
member" does not warrant a determination that corporate officers
are class one beneficiaries."  Id. at 475.  The Court went on to
conclude that,"the Pennsylvania Superior Court decisions compel the
conclusion that where, as here, the policy plainly indicates that
the term "you" refers to the named insured corporation, and only

14

the named insured, a corporate officer is not a class one beneficiary under the policy." Id. at 477.  The Court declined to follow the holding in *Ober* because it was a variance with the Superior Court's decision in *Hunyady*.  Id. at 477; (foontnote 6).

Defendants argue that a key fact distinguishes the instant case from *Tierney* and the cases cited within it.  (Doc. 22 at 10). The critical difference is that here, Mr. Hinchey was driving a covered vehicle.  After reviewing the District Court's decision in *Tierney*, we agree with Defendants that *Tierney* cannot be reconciled with the instant case.  It does not appear insignificant that regardless of all other matters discussed, the Court in *Tierney* concluded its opinion by stating that "the policy in question afforded UIM coverage only if Ms. Tierney had been injured while occupying a covered vehicle, a condition not met here."  Id. at 479.

Defendants' argument is further supported by the Circuit Court's non-precedential opinion in *O'Connor-Kohler v. State Farm Insurance Co.*, 113 Fed.Appx. 472 (3d Cir.2004).  While *O'Connor-Kohler* did not deal with a fleet policy, the Court addressed the issue of "class" of insured.  Pointing to the Supreme Court's hesitancy to directly address the question of whether or corporate officers are "class one" insureds, the Court stated that "[t]hat question appears to have been answered in the affirmative in later cases." *O'Connor-Kohler*, 113 Fed.Appx. at 474.  Considering

Pennsylvania case law, the Court stated that it seems likely that officers and directors are "class one" insureds where the corporation is the named insured. Id. at 474. Therefore, the Court found that the plaintiff, the passenger in the vehicle, could have recovered stacked benefits if she were a relative of the driver. Id.; *See Ober* and *State Farm Mut. Auto. Ins. Co. v. Kramer*, 2003 WL 23100165 (Pa.Com.Pl. Mar. 31, 2003).

Defendants also cite to the Eastern District Court's decision in *Lehman v. Nationwide Mutual Ins. Co.*, 1990 WL 87277 (1990), in which the Court found that the President of the named insured corporation was an intended beneficiary for purposes of stacking. The Court in Lehman stated that "[a]lthough the plaintiff was not a named insured and did not pay the premiums from personal funds, plaintiff, as President of Energy, was an intended beneficiary." Id. at 3. Therefore, citing to *Miller*, the court found that the insured was entitled to stack benefits. Id.

Because there is no straight line rule available in the case law, it appears that each Court utilizes the relevant facts available in a given case to make a reasonable determination. Therefore, it is only by considering the factual situation presented in the instant case that we are able to find some clarity on this somewhat baffling issue. We consider the following facts to be relevant and persuasive:

1. Mr. Hinchey was driving a covered vehicle at the time of the

accident;

2.  Mr. Hinchey was a corporate officer of Matheson Warehouse

   Co., which was the named insured corporation;

3.  Mr. and Mrs. Hinchey were named the individuals on the

   "Broadened First Party Benefits" endorsement;

4.  The reasonable expectation of the insurer and the policy holder

   was that the Hincheys were covered while using a covered vehicle.

     As a result of the foregoing discussion, and based on the

totality of the circumstances that we find were either admitted or

found by the Court in this case, the Court is led to the conclusion

that the Hincheys were indeed covered parties under the policy at

issue.  Therefore, Defendants are entitled to summary judgment on

their behalf on this issue.

C.   <u>Amount of Underinsured Motorist Coverage</u>

     In addition to seeking the ability to stack benefits,

Defendants claim that they are entitled to underinsured motorist

benefits equal to the one million dollar liability limits pursuant

to 75 Pa. C.S.A. Section 1734 and interpretive case law.  (Doc. 22

at 13).  Defendants claim that Pennsylvania law requires an insurer

to provide uninsured/underinsured coverage limits in an amount

equal to the liability limits unless the insured has requested, in

writing, lower limits of underinsured/uninsured coverage.  <u>Id.</u>  The

relevant portion of Section 1734, entitled "Request for Lower

Limits of Coverage" states:

> A named insured may request in writing the issuance of
> coverages under Section 1731 in amounts equal to or less than
> the limits of liability for bodily injury.  However, for this
> election to occur, the insurer must comply with the important
> notice provisions of 75 Pa. C.S.A. Section 1791.

It appears undisputed that Transguard has not produced written request from the Hincheys themselves requesting lower limits of uninsured/underinsured coverage.  Therefore, the issue is whether the request made by a representative of Paul Hertel, Co. is sufficient to meet the requirements of § 1734.  Specifically, the question is whether or not Paul Hertel, Co. is considered an agent of Matheson Warehouse or of Transguard.

Defendants rely on this District Court's decision in *Cebula v. Royal & SunAlliance Insurance Co.*, 158 F.Supp.2nd 455 (2001), in which Judge Munley concluded that insurance carriers must provide uninsured/underinsured coverage in amounts equal to the liability coverage unless the named insured requests, in writing, coverage less than the liability amount.  <u>Id.</u> at 458.  In *Cebula*, the Plaintiffs originally purchased a personal automobile policy from Royal and SunAlliance with liability limits of Three Hundred Thousand ($300,000.00) dollars and uninsured/underinsured coverage of three hundred thousand dollars.  The bodily injury coverage was later raised to five hundred thousand dollars but the underinsured/uninsured coverage remained at three hundred thousand dollars.  Plaintiffs never submitted a written request to reduce their underinsured/uninsured coverage.  Defendants cite to the

following language from *Cebula*:

> Section 1731 is a simple statement whose plain meaning is
> apparent from its language.  It mandates that an insurance
> company cannot issue a policy in the Commonwealth of
> Pennsylvania unless it provides uninsured/underinsured
> coverage equal to the bodily injury liability coverage, except
> as provided in Section 1734.

158 F.Supp.2nd at 459; citing *Nationwide Insurance Company v.
Resseguie*, 980 F.2nd 226, 230 (3d.Cir.1992).  Defendants argue,
therefore, that the Court's holding in *Cebula* and other
Pennsylvania cases dictate a finding in their favor because
Transguard does not possess a valid written request for lower
coverage.  (Doc. 22 at 16).

In response, Plaintiff argues they do in fact possess a valid
request for lower coverage.  (Doc. 25 at 13).  The insurance broker
representing Matheson Warehouse Co., Inc. was Paul Hertel & Co.
Id.  Plaintiff claims the broker submitted a renewal application
which included a description of the liability and
uninsured/underinsured coverage which were being requested by
Matheson.  Id.  Plaintiff claims the written submission requested
liability limits in the amount of one million dollars and
uninsured/underinsured limits in the amount of five hundred
thousand dollars.  Id.  Therefore, Plaintiff claims the documents
were submitted by the Defendants' broker, and meet the requirements
of 75 Pa.C.S. § 1734.  Id.

Plaintiff takes additional issue with the Defendants' reliance
on the decision in *Cebula* because that decision followed a non-jury
trial at which the Court took evidence.  Id.  Because there is not

19

a similar factual record in this case, Plaintiff claims that Defendants seek judgment based on their own "conclusory statements." <u>Id.</u>

In reply, Defendants assert that Paul Hertel & Company actually has a contractual relationship with Plaintiff, Transguard. (Doc. 29-1 at 5).  Defendants support their claim by referencing the deposition of Susan Richardson, a Transguard employee, and e-mails between Ms. Richardson and Bill Smith, an employee of Paul Hertel & Company.  <u>Id.</u>  Furthermore, Defendants claim that 75 Pa. C.S.A. § 1734 requires that the "named insured", not a broker file a written request for underinsured/uninsured coverage in an amount less than the liability limit.  <u>Id.</u>

It appears that the submissions made to the Court so far give rise to what can be viewed as a question of agency.  Therefore, it appears clear that determination of the amount of underinsured motorist coverage available to Defendants is not appropriate for disposition on summary judgment.  In order to resolve this issue, the Court will schedule a hearing so that the parties may present evidence and testimony and enable the Court to better determine the effect of the agency issue presented.  Therefore, Defendants' Motion for Summary Judgment as to the amount of underinsured motorist coverage available is denied.

III. <u>Conclusion</u>

Based on the foregoing argument, Defendants' Motion for Summary Judgment is granted in part and denied in part.  Because we have not determined the amount of coverage available under the

underinsured motorist benefits, we will determine the amount

Defendants' total recovery after we hold a hearing on the issue.

Plaintiff's Motion for Summary Judgment is denied.

An appropriate order follows.



Date: May 30, 2006

                                        S/Richard P. Conaboy

                                        Richard P. Conaboy
                                        United States District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
TRANSGUARD INSURANCE COMPANY      :
OF AMERICA, INC.,                 :
                                  :   Civil Action No. 05-cv-538
          Plaintiff,              :
                                  :
     v.                           :
                                  :
MICHAEL HINCHEY and SHARON HINCHEY,:  JUDGE CONABOY
his wife,                         :
                                  :
          Defendants.             :
```
_____

<u>Order</u>

Now, this _30th day of May, the following order is entered:


1.   Defendants Motion for Summary Judgment, (Doc. 21), is granted

     in part and denied in part; and

2.   Plaintiff's Motion for Declaratory Judgment, which was

     converted to a Motion for Summary Judgment, (Doc. 1) is

     denied; and

3.   A hearing will be scheduled regarding the amount of

     underinsured coverage available to Defendants.


                              <u>S/Richard  P. Conaboy</u>
                              Richard P. Conaboy
                              United States District Court