IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TRANSGUARD INSURANCE COMPANY
OF AMERICA, INC.,                    :
                                     :
       Plaintiff,                    :        CIVIL ACTION NO. 05-CV-538
                                     :
       v.                            :
                                     :
MICHAEL HINCHEY and                  :
SHARON HINCHEY, his wife,            :        (JUDGE CONABOY)
                                     :
       Defendants.                   :

## MEMORANDUM

Here we give final consideration to what the Court has construed as the parties' cross-motions for summary judgment.[1] (Doc. 18.)  This opinion supplements the prior Memorandum and Order of this Court entered on May 30, 2006.  (Doc. 30.) Transguard Insurance Company of America ("Plaintiff" or "Transguard"), seeks declaratory judgment of the amount of underinsured motorist ("UIM") coverage available to Michael and Sharon Hinchey ("Defendants").  (Doc. 1.)

Plaintiff is a foreign corporation organized and existing under the laws of Illinois.  (Doc. 1, ¶ 1.)  Defendants are

---

[1] Plaintiff filed a complaint seeking declaratory judgment. (Doc. 1.)  Subsequently, Defendants filed a motion to dismiss. (Doc. 9.)  This Court converted the pending matters to cross-motions for summary judgment.  (Doc. 18.)  In the prior Memorandum and Order of May 30, 2006, and presently before the Court are arguments submitted in Defendants' brief in support of their motion for summary judgment (Doc. 22) and Plaintiff's brief in opposition (Doc. 25.), as well as supplemental filings, (Docs. 24, 27, 29, 36-38).

residents of Pennsylvania.  (Doc. 1, ¶ 3-4.)  Therefore, this declaratory action comes before the Court through diversity jurisdiction.  28 U.S.C. §§ 1332(a), 2201.  There is no dispute that Pennsylvania substantive law applies.  *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938).

I.   **FACTUAL BACKGROUND**[2]

Michael Hinchey ("Defendant") was injured on December 21, 2002, in a motor vehicle accident.  (Doc. 36 at 1.)  An insurance policy existed between the insurer, Transguard, and Matheson Warehouse Company ("Matheson"), with an effective period of May 5, 2002, to May 5, 2003.  (Doc. 1 at 2, ¶ 8.)  At the time of the accident, Defendant was driving a vehicle listed in the policy as a Covered Auto.  (Doc. 1 at 4, ¶ 16.)  The policy covered a large number of vehicles.  (Doc. 30 at 2.)  Additionally, eight (8) vehicles were designated for personal use by employees, including the vehicle driven by Defendant.  *Id*.

Paul Hertel & Comapny ("Hertel"), the insurance broker, and Transguard previously executed an agency contract.  (Doc. 36 at 4-5, Ex. A.)  The contract was effective until canceled by one of the companies.  *Id*.  According to Susan Richardson, an executive of Transguard, agency contracts, like the one here, were executed between Transguard and brokers that would like to submit insurance

---

[2] This factual background supplements the recitation of facts contained in the Memorandum and Order of May 30, 2006.  (Doc. 30.)

applications on behalf of their customers.  (Doc. 36, Ex. A.)
Further, Transguard's agency contract contained agreements defining
how Transguard and the brokers would conduct business with each
other.  (Doc. 36 at 4-5, Ex. A.)

Initially, Matheson, through the insurance broker, Hertel,
applied for insurance with Transguard on or about February 23,
2001.  (Doc. 37 at 3.)  On May 4, 2001, Bill Smith, an employee of
Hertel, sent an electronic message ("e-mail") to Susan Richardson,
an executive of Transguard.  (Doc. 37 at 3, Ex. B.)  In the e-mail,
Smith stated that certain changes to coverage were to be made.
(Doc. 37, Ex. B.)  The e-mail from Smith included, among several
other requests relating to Matheson's policy, a request for UIM
limits of $500,000.00 per vehicle.  *Id.*  The requested UIM coverage
was less than the bodily injury liability limits of $1,000,000.00
per vehicle.  (Doc. 37 at 3.)

Also in the e-mail, Smith requested Richardson to provide him
with the premium amount so that he could bill Matheson.  (Doc. 37,
Ex. B.)  Richardson replied to Smith's e-mail with a quote dated
May 17, 2001.  (Doc. 37 at 3, Ex. C.)  On August, 17, 2001, Traci
Pepe, an employee of Hertel, signed the policy acceptance form on
behalf of Matheson.  *Id.*

## II.  <u>PROCEDURAL BACKGROUND</u>

In the prior Memorandum and Order of May 30, 2006, the Court
originally considered the parties' arguments for cross-motions for

summary judgment.  (Doc.  30.)  At that time, Plaintiff argued that the amount of UIM coverage on the eight vehicles designated for personal use was limited to $500,000.00 for each vehicle.  (Doc. 25 at 13.)  This argument was based on a request via e-mail made to Plaintiff by the insurance broker, Hertel.  *Id.*  Plaintiff argued the e-mail satisfied the statutory requirements for a request for UIM coverage in an amount less than the bodily injury limit under the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), as set forth in 75 Pa. C.S. § 1734.  *Id.*

In contrast, Defendants argued that the UIM coverage was equivalent to the liability limit of $1,000,000.00 per vehicle and $8,000,000.00 after stacking coverage.  (Doc.  29 at 18.) Defendants asserted that the coverage amount requested by the insurance broker for reduced UIM coverage was not valid under 75 Pa. C.S. § 1734.  (Doc. 29 at 7.)  Further, Defendants maintained the e-mail was ineffective because it was not a written request by the named insured.  (Doc. 29 at 5-6.)  Defendants also alleged that the broker was acting as the agent of the insurer, Transguard, and not as an agent of the named insured.  (Doc. 29 at 6.)  Therefore, according to Defendants, the e-mail could not be construed as a written request by the named insured.  (Doc. 29 at 6.)

This Court made the following findings:

1.    The named insured, Matheson Warehouse Company

("Matheson"), purchased a Transguard Insurance Company of

4

America insurance policy through Paul Hertel & Company
("Hertel"), an insurance broker (Doc. 30 at 18);

2.     The policy covered a large number of vehicles, of which,
eight (8) vehicles owned by Matheson were designated for
personal use (Doc. 30 at 2) by employees, such as Michael
Hinchey, and their spouses (Doc. 30 at 17);

3.     The stacking of UIM coverage was available for the eight
(8) personal use vehicles (Doc. 30 at 2);

4.     Michael Hinchey ("Defendant") was an officer and employee
of Matheson (Doc. 30 at 17);

5.     Defendant was severely injured in an automobile accident
while driving a vehicle covered by the insurance policy
issued by Plaintiff (Doc. 30 at 16-17); and

6.     Defendants were entitled to stack UIM coverage for the
eight (8) vehicles designated for personal use (Doc. 30
at 17).

This Court summarized the remaining issue as whether the
request via e-mail of an employee of the insurance broker was
sufficient to meet the requirements of 75 Pa. C.S. § 1734. (Doc.
30 at 18.)  We concluded that the proper inquiry began with the
question of whether the insurance broker acted as an agent of the
named insured, Matheson, or the insurer, Transguard. *Id.*  This
Court determined that disposition of the issue was not appropriate
at that time and reserved the determination of the amount of UIM

coverage available to Defendants until after further hearing on the remaining issue.  (Doc. 30 at 20.)

Counsel for the parties have submitted the required briefs on the remaining issue (Docs. 36-38), and the Court heard oral argument on October 19, 2006, and the remaining issue is now ripe for disposition.

## III. **FINDINGS**

Based upon the oral argument and the written submissions of the parties, the Court finds that:

1.   There was a valid commercial auto insurance policy issued by Transguard to Matheson;

2.   The policy was in force on the day of the accident;

3.   Michael Hinchey was an insured under the policy and was driving a covered vehicle on the day of the accident;

4.   The policy provided coverage of eight (8) vehicles, among other things, for the personal use of parties like the Hincheys;

5.   The broker, Hertel, was at all times pertinent to the outcome of this case, acting as the agent of the named insured, Matheson, not the insurer, Transguard;

6.   The e-mail request made by the broker was not a valid request under the Pennsylvania MVFRL under § 1734 to limit the amount of UIM coverage on each vehicle to $500,000.00;

7.    The available UIM coverage is in the amount of
      $1,000,000.00 per vehicle;

8.    Defendants are entitled to stack the coverage under the
      policy, resulting in a total amount of UIM coverage of
      $8,000,000.00.[3]

## IV.   **DISCUSSION**

As a preliminary matter, Plaintiff indicated in its brief
(Doc. 37 at 2) and at oral argument that contrary to this Court's
prior order (Doc. 30 at 2 n.2), no agreement existed between the
parties regarding the designation of eight (8) vehicles for
personal use under the policy.  (Doc. 37 at 2.)  However,
Defendants' cross-motion for summary judgment asserted that, "as of
December 21, 2002[,] Transguard provided coverage for eight (8)
non-commercial, personal use vehicles, including the following . .
. ."  (Doc. 19 at 2, ¶ 6.)  Defendants' motion then listed eight
(8) vehicles that appeared in the policy.  (Doc. 19 at 3, ¶ 6.)  In
Plaintiff's answer, Plaintiff admitted Defendants' factual
assertion.  (Doc. 24 at 1, ¶ 6.)  Therefore, this issue is

---

[3] This amount is of course not a windfall for Defendants, as
they will still be required to prove damages.  The amount only
represents Plaintiff's total obligation under the policy in
conformance with the Pennsylvania MVFRL.  Here, Defendants were
awarded $3,750,000.00 in arbitration for damages.  (Doc. 37 at 2.)
The third party tortfeasor's insurance carrier paid Defendants that
policy's limit of $100,000.00.  *Id.*  Plaintiff paid Defendants
$500,000.00, which is the amount Plaintiff argues is all that is
due for UIM motorist coverage under the policy at issue.  *Id.*
Subtracting payments received by Defendants, the outstanding
balance of the arbitration judgment is $3,150,000.00.  *Id.*

undisputed.  *See* Local Rule 56.1. of the Local Rules of Court of the Middle District of Pennsylvania.

A.   <u>Summary Judgment Standard.</u>

The standard for granting summary judgment in a declaratory judgment action is the same as for any other type of relief. *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Marketing Board*, 298 F.3d 201, 210 n.12 (3d Cir. 2002).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Knabe v. Boury*, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing Fed. R. Civ. P. 56(c)).  "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the law applicable to the case.  *Id*. at 248; *Levendos v. Stern Entertainment Inc.*, 860 F.2d 1227, 1233 (3d Cir. 1988).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party.  *Anderson*, 477 U.S. at

257.  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party.  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact.  The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof."  *Celotex*, 477 U.S. at 325.  The nonmoving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  When Rule 56(e) shifts the burden of proof to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial.  *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

The summary judgment standard does not change when the parties have filed cross-motions for summary judgment.  *Applemans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).  When confronted with

cross-motions for summary judgment, as in this case, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard." *Marciniak v. Prudential Financial Ins. Co. of America*, No. 05-4456, 2006 WL 1697010, at *3 (3d Cir. June 21, 2006) (citations omitted) (not precedential).  If review of cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts.  *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

B.   <u>Motions for Summary Judgment (Analysis).</u>

The remaining issue before this Court is whether, under the Pennsylvania MVFRL, an e-mail sent from an insurance broker to an insurer qualifies as a written request by the named insured for reduced UIM limits pursuant to 75 Pa. C.S. § 1734.  Plaintiff argues the insurance broker was the agent of the named insured, Matheson, for the purpose of requesting an amount of UIM coverage less than the bodily injury liability limits.  (Doc. 37 at 5.) Plaintiff thus concludes the e-mail sent to the insurer by the broker satisfies the statutory requirement for a written request from the named insured.  (Doc. 37 at 6-7.)  Finally, Plaintiff asserts the amount of available UIM coverage per vehicle should remain at $500,000.00 and not $1,000,000.00 per vehicle.  These

10

arguments will be addressed in order.

1. <u>The Agency Status of the Insurance Broker.</u>

Initially, we address the question of whether the broker was the agent of the named insured for the purposes of sending the e-mail at issue.  Based upon the parties' arguments and the totality of the circumstances, this Court finds that the broker was the agent of the named insured for all purposes relevant to this case.

The Pennsylvania Supreme Court held an insurance broker is considered the agent of the insured when the insured employs a broker to choose an insurer.  *Taylor v. Crowe*, 282 A.2d 682, 683 (Pa. 1971).  The *Taylor* court further held in order for a broker to be an agent of an insurer some evidence must demonstrate authorization by the insurer or facts from which a reasonable inference may be made.  *Id.* at 683-684.

In *Fisher v. Aetna Life Ins. & Cas. Co.*, 39 F. Supp.2d 508, 514 (M.D. Pa. 1998), *aff'd,* 172 F.3d 472 (3d Cir. 1999), Judge Caputo observed a broker may be an agent of an insured for some purposes and an agent of an insurer for others.  *See also Rich Maid Kitchens, Inc. v. Pennsylvania Lumbermens*, 641 F. Supp. 303, 305 (E.D. Pa. 1986).  In *Rich Maid Kitchens,* the court held the collection of premium payments was not determinative of a broker's agency.  *Rich Maid Kitchens,* 641 F. Supp. at 305.  The court held, at most, the collection of premium payments would establish an agency relationship between the broker and the insurer for that

11

function. *Id.*

Plaintiff argues the insurance broker was the agent of the named insured, Matheson. (Doc. 37 at 5.) Relying on the Pennsylvania Supreme Court decision in *Taylor v. Crowe*, Plaintiff asserts that under Pennsylvania law, generally, when an insured employs a broker to obtain insurance, the broker is considered an agent of the insured, not the insurer. *Id.* Additionally, Plaintiff maintains the record is void of any facts to overcome the general rule to support a finding that the broker was the agent of the insurer. *Id.*

Even if the broker is found to be the agent of the insurer for some purposes, such as the collection of premiums, Plaintiff cites *MIC Prop. & Cas. Ins. Co. v. Crawford*, 2001 U.S. Dist. Lexis 24212 (E.D. of Pa. Oct. 30, 2001) (citing *Fisher v. Aetna Life Ins. & Cas. Co.*, 39 F. Supp.2d at 514), for the proposition that the broker could still be found to be the agent of the insured for other purposes. *Id.* Plaintiff, also argues the record establishes the broker in this case, Hertel, submitted an application on behalf of the named insured and an e-mail requesting UIM limits of $500,000.00, and other changes and additions. *Id.* at 6-7.

Defendants counter that an agency contract existed between the broker and the insurer. (Doc. 36 at 4-5.) This contract, according to Defendants, was inclusive of various agreements as to how the broker and the insurer would conduct business. *Id.* at 5.

Defendants assert that as per the testimony of Susan Richardson, the Managing Vice-President of the insurer, the contract was to stay in existence unless cancelled by either party. *Id.* Thus, Defendants contend a principle-agent relationship exited between the insurer and the broker. *Id.*

Additionally, Defendants cite *Triage, Inc. v. Prime Insurance Syndicate, Inc.*, 887 A.2d 303 (Pa. Super. 2005), for the proposition that the collection of premiums is sufficient to create an agency relationship between the broker and the insurer. (Doc. 36 at 5-6.) According to Defendants, the e-mail in the instant case evidences the broker's attempt to collect the premium. Therefore, Defendants allege the broker was the agent of the insurer, Transguard. *Id.* at 5.

This Court finds that the broker was the agent of the named insured for all purposes relevant to this case. The Pennsylvania Supreme Court held the general rule under Pennsylvania law is when a broker is utilized to secure insurance from no particular insurer, the broker is the agent of the insured. *Taylor*, 282 A.2d at 683. The general rule may be overcome with persuasive evidence that the broker was the agent of the insurer, *id.* at 683-84, but no such evidence is present in this case.

The record establishes the broker, on behalf of Matheson, obtained a commercial insurance policy from the insurer. An employee of the broker sent an e-mail to the insurer requesting

various changes with regard to coverage on behalf of the named
insured, including a request for $500,000.00 of UIM coverage.   In
addition, the same e-mail requested the insurer to provide the
broker with the premium amount in order to bill the insured.   In
response to the broker's e-mail, an employee of the insurer
provided a quote to the broker reflecting the requested changes.
Additionally, the policy at issue became binding after an employee
of the broker signed the policy acceptance form on behalf of
Matheson.

Turning to Defendants' counter-arguments, the record
establishes that the insurance broker and the insurer executed an
agency contract.   However, the Pennsylvania Superior Court held
that agency contracts alone are not sufficient to establish the
agency between a broker and an insurer.   *Kairys v. Aetna Cas. &
Sur. Co.*, 461 A.2d 269, 273 (Pa. Super. 1983).   The court in *Kairys*
further held that the terminology of an agency contract may be
inconclusive or inconsistent with the actual or implied authority
of the parties.   *Id.*

Recognizing that Pennsylvania Superior Court decisions are not
binding, *see Burke v. Maasen*, 904 F.2d 178, 182 (3d Cir. 1990)
(stating that a federal court may consider state intermediate
appellate court opinions in the absence of a clear decision by a
state's highest court), this Court is in accord with the *Kairys*
court.   The mere existence of an agency contract is not enough to

14

establish that the broker was the agent of the insurer.  *See Kairys*, 461 A.2d at 273.  The agency contract merely described the manner in which a broker was to conduct business with the insurer and the contract could be canceled by either party.  Absent more direct evidence of the scope of the broker's authority on behalf of the insurer, such a contract is insufficient to support a finding that the broker was the agent of the insurer for all purposes relevant to this case.

Defendants' second argument is that an agency relationship was established by the broker's attempt to collect a premium from the insured.  (Doc. 36 at 5-6.)  Relying on the Pennsylvania Superior Court's holding in *Traige*, Defendants assert that the broker's e-mail requesting the insurer to provided the premium amount in order for the broker to bill the insured is sufficient to create the agency.  *Id.*

This Court finds *Triage* to be distinguishable from the instant case.  The matter before the court in *Triage* was whether premium payments collected by a broker created a principle-agent relationship with the insurer.  *Triage,* 887 A.2d at 304.  The relationship resulted in the liability of the insurer for the full amount of the premium paid by the insured and not just the actual amount received from the collecting broker.  *Id.*

Here, the entire context of the e-mail cannot be said to relate to the purpose of collecting a premium on behalf of the

insurer. The content of the e-mail refers to several requests for changes in coverage on behalf of the insured. Although an agency relationship with the insurer may have been created when the broker requested the premium amount for the purpose of collection, any resulting relationship from the attempt to collect a premium was limited in scope to that function. *Fisher*, 39 F. Supp. 2d at 514; *Rich Maid Kitchens*, 641 F. Supp. at 303.

Based upon the above, this Court finds that, when viewed in the totality of the circumstances, the broker was the agent of the named insured, Matheson, in matters pertinent to this case. This Court previously found that Defendants, Michael and his wife Sharon Hinchey, were also covered parties by virtue of Michael Hinchey's position as a corporate officer of Matheson.

2. The Written Request by the Named Insured.

Having found the broker was the agent of the named insured, the sufficiency of the e-mail sent by the broker to the insurer must be analyzed under the statutory requirements for a written request by the named insured for UIM coverage in an amount less than the limits of liability for bodily injury pursuant to 75 Pa. C.S. § 1734. For the reasons discussed below, this Court finds the e-mail sent from the broker to the insurer did not satisfy the statutory requirements for a request by a named insured as provided in § 1734.

16

The MVFRL in § 1734 provides:

> A named insured may request in writing the
> issuance of coverages under section 1731
> (relating to availability, scope and amount
> of coverage) in amounts equal to or less than
> the limits of liability for bodily injury.

75 Pa. C.S. § 1734.

The Court's research reveals no Pennsylvania Supreme Court nor any other Pennsylvania court case on point with the precise situation presented. Therefore, this Court must predict how the Pennsylvania Supreme Court would interpret § 1734 of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), *see, e.g., Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir. 1981), under the circumstances of this case. The Court may consider the decisions of lower state courts, but such decisions are not conclusive. *See, e.g., Burke v. Maason*, 904 F.2d 178, 182 (3d Cir. 1990). Intermediate state court opinions should not be disregarded by a federal district court absent other persuasive data that the state's highest court would decide differently. *West v. AT & T Co.*, 311 U.S. 223, 237 (1940); *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634 (3d Cir. 2000).

In predicting the Pennsylvania Supreme Court's interpretation of § 1734, the Court is further guided by the Pennsylvania rules of statutory construction. These rules provide that where a statute is clear on its face and unambiguous, it should be interpreted by

17

its plain meaning.[4]  1 Pa. C.S. 1921(b).

The MVFRL as amended in 1990 sets forth the requirements regarding UIM coverage in insurance policies issued in Pennsylvania. *See* 75 Pa. C.S. § 1701, *et seq.*  The MVFRL provides that, although UIM coverage is optional, no motor vehicle insurance policy may be issued in Pennsylvania unless UIM coverage is offered or supplemented in the amounts as provided for in § 1734.  75 Pa. C.S. § 1731(a).[5]  Further, the MVFRL provides that a named insured may request in writing UIM coverage in an amount less than the limits of liability for bodily injury.  75 Pa. C.S. § 1734.

The Pennsylvania Supreme Court discussed the policies underlying the MVFRL in *Lewis v. Erie Ins. Exchange*, 793 A.2d 143

---

[4] The Pennsylvania rules of statutory construction in 1 Pa. C.S. § 1921(b) provide:

> (b) When the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

[5] The Pennsylvania MVFRL in 75 Pa. C.S. § 1731(a) provides:

> (a) Mandatory offering.-No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage).  Purchase of uninsured motorist and underinsured motorist coverages is optional.

(Pa. 2002).  The court explained that the Pennsylvania General
Assembly in enacting the MVFRL was concerned with containment of
rising insurance costs.  *Lewis*, 793 A.2d at 151.  Moreover, the
court found the requirements under the MVFRL for UIM coverage serve
to promote recovery for accident victims in the event negligent
motorists are not adequately insured.  *Id.*  Pennsylvania courts also
have held the MVFRL should be construed liberally to provide the
greatest coverage to the injured claimants.  *Motorists Ins. Co. v.
Emig*, 664 A.2d 559, 566 (Pa. Super. 1995); *see also Lewis*, 793 A.2d
at 152 (summarizing that the scheme of the MVFRL includes an effort
to preserve core remedial aspects).  In any doubtful or close
cases, the court must interpret the intent of the legislature to
provide the greatest coverage for the insured.  *Emig*, 664 A.2d at
566.

The Pennsylvania Supreme Court in *Lewis* also held that the §
1734 writing was not required to conform to the stricter
prescriptions of section 1731 for rejecting UIM coverage.  *Lewis*,
793 A.2d at 155.  In *Lewis*, the insured elected UIM coverage in an
amount less than the bodily injury limit.  The insured signed a
form indicating such reduced amounts and the form contained other
options if desired by the insured.  The insured attacked the
validity of the form claiming that it violated the separate page
requirement of section 1731(c.1) of the MVFRL.  The court held that
the section 1731(c.1) did not apply to § 1734 requests and, thus,

19

the election for lower limits by the insured was enforceable. *Id.*

Plaintiff argues the e-mail sent to the insurer by the broker satisfies the statutory requirement for a written request from the named insured. (Doc. 37) According to Plaintiff, a corporation can only act through its agents. *Id.* at 4. As asserted by Plaintiff, the broker's actions must be imputed to the named insured due to the status of the broker as agent for the named insured. (*Id.* at 6 (citing *Brickman Group Ltd. v. CGU Ins. Co.*, 865 A.2d 918, 925 (Pa. Super. 2004)).) Thus, Plaintiff contends that the e-mail request sent from the broker satisfies the requirements of § 1734. *Id.* at 4.

In contrast, Defendants assert the named insured must sign the writing and the writing must include an express designation of the amount of coverage requested under § 1734. (Doc. 36 at 6-7.) Additionally, Defendants argue neither Michael Hinchey nor any corporate officer of the named insured submitted a written request for UIM coverage less than the liability limits, and thus, there was not a valid request for limits less than the bodily injury liability as required by § 1734. *Id.* at 11-12.

This Court begins its analysis of this issue with the requirements of the statute. Under § 1734 of the MVFRL, two requirements must be met in order to have a valid request for UIM coverage less than the bodily injury limits. First, the request must be made by the named insured. 75 Pa. C.S. § 1734. Second,

the request must be in writing. *Id.*

The Pennsylvania Supreme Court has interpreted a request for reduction of coverage under § 1734 as not requiring compliance with the form for rejection under § 1731(c.1). *Lewis*, 793 A.2d at 155. However, the court in *Lewis* did not go so far as to broaden the provisions of § 1734 to provide that any person other than the specific named insured could make a written request.

In this case, the named insured corporation, Matheson, utilized the services of an insurance broker to secure insurance coverage for its large number of vehicles. The insurance broker sent an e-mail to the insurer requesting UIM coverage in the amount of $500,000.00 for the policy that was effective at the time of the accident. The bodily injury limit of the policy was $1,000,000.00.

The broker's e-mail (Doc. 37 at 3, Ex. B.) requested a number of changes to the policy at issue, e.g. deletion of vehicles, addition of a covered vehicle, request to amend building and personal property coverage. Among these requests was a change in UIM coverage to $500,000.00. The bodily injury liability limit was $1,000,000.00. But, it is undisputed that neither a corporate officer nor a designated employee sent a written request to the broker or the insurer requesting UIM coverage in an amount less than the bodily injury liability limit.

The plain meaning of § 1734 requires that only a named insured can provide the written request. *See Nationwide Ins. Co. v.*

21

*Resseguie*, 980 F.2d 226, 231 (3d Cir. 1992) (citing the plain meaning rule of statutory construction to interpret § 1734 of the Pennsylvania MVFRL). In *Lewis*, the Pennsylvania Supreme Court approved of the plain meaning interpretation of § 1734. *Lewis*, 793 A.2d at 154. The Supreme Court held that the Superior Court panel in that decision applied the plain language of the statute, and approved of the reasoning in its application of the plain meaning of § 1731. *Lewis*, 793 A.2d at 154 (stating that the superior court's determination was in accord with the supreme court's plain meaning interpretation of § 1731 in *Winslow-Quattlebaum v. Maryland Ins. Group*, 752 A.2d 878 (Pa. 2000)).

Although this Court found that the broker was the agent of the named insured, no corporate officer nor designated employee of the named insured corporation sent a written request to either the broker or the insurer requesting UIM coverage less than the bodily injury limits. Even assuming that the broker was authorized to request UIM coverage in an amount less than the bodily injury limit, § 1734's requirements cannot be satisfied without a writing by the named insured, not the named insured's agent. *Resseguie*, 980 F.2d at 232; *Fire & Cas. Co. v. Cook*, 155 F. App'x 587, 598 (3d Cir. 2005) (not precedential opinion).

In *Cook*, similar to the facts of this case, the insurer relied on writings by a corporation's insurance agent as satisfying a written request for reduced UIM coverage. *Cook*, 155 F. App'x at

593.  The court in *Cook* held that since no employee of the corporation sent the writings at issue, the Pennsylvania Supreme Court would not accept the agent's writings as satisfying § 1734.[6] *Cook*, 155 F. App'x at 593 (citing the Pennsylvania Superior Court's holding in *Emig*).  Thus, the e-mail sent by the broker, at most, evidences an intention to purchase UIM coverage in an amount lower than the bodily injury limit, but does not satisfy § 1734.

This Court agrees with Plaintiff to the extent that a corporation can only act through its "agents or officers." However, § 1734 mandates that only a named insured, not an agent of a named insured, may request UIM coverage less than the bodily injury limit.  Thus, § 1734 required that a written request for UIM coverage in an amount less than the bodily injury amounts be made by a corporate officer or some other designated employee of the company.  *See Emig*, 664 A.2d 559, 565 (Pa. Super. 1995) (holding that, absent a written request by the named insured, an insurer's agent was not authorized to fill in and circle choices on a form on

---

[6] Recognizing the "not precedential" status of *Cook*, this Court does not feel our reliance is misplaced.  According to the Third Circuit Court of Appeals Internal Operating Procedures, a majority of a panel deciding a case determines whether a case is "precedential" or "not precedential."  3d Cir. IOP 5.1.  A case is "not precedential" when it only has value to the trial court or the parties.  3d Cir. IOP 5.3.  Traditionally, the Third Circuit Court of Appeals does not cite its "not precedential" opinions because the opinions do not circulate to the full court before filing.  3d Cir. IOP 5.7.  However, drafts of decisions that are not unanimous, such as *Cook* in which Judge Weis dissented, *are* circulated to all active judges of the court in order to give them an opportunity to request an *en banc* consideration.  3d Cir. IOP 5.5.4.

behalf of the insured requesting reduced UIM amounts).  To hold differently would create unintended ambiguities in the MVFRL as to who may affect the request for reduced UIM limits where the statute is otherwise clear.  *See Nationwide Ins. Co. v. Resseguie*, 980 F.2d 226, 232 (3d Cir. 1992).  In this matter, no writing was provided by the named insured requesting lower limits of UIM coverage. Therefore, this Court finds Plaintiff was not entitled to rely on the e-mail from the broker requesting UIM coverage as it was not a writing by the named insured.[7]  75 Pa. C.S. § 1734.

    3. <u>The Amount of UIM Coverage Available to Defendants.</u>

    Based upon the conclusion that there is no valid § 1734 written request by the named insured, the amount of available UIM coverage must be determined.  Preliminarily, the Court notes that no precedent exists from the Pennsylvania Supreme Court precisely on point with the issue presented, *see supra* p. 17.  Considering the relevant case law and rules of statutory construction, this Court determines that the amount of UIM coverage available to Defendants is equal to the bodily injury liability limit, i.e. $1,000,000.00 per vehicle.

---

    [7] Since this Court finds that the agent could not satisfy the requirement of § 1734 of a named insured, analysis of the sufficiency of an e-mail as a writing under the statute is unnecessary.  Likewise, as discussed in the text, *see supra* p. 24, we do not reach the issue of the sufficiency of the e-mail. However, we note that a writing should generally exemplify a knowledge of what the writer is entitled to and a decision about what the writer wants.

As previously discussed, *see supra* pp. 18-19, the MVFRL provides that uninsured and UIM motorist coverage must be offered in every motor vehicle policy issued or delivered in Pennsylvania. 75 Pa. C.S. § 1731(a).   Section 1731 also states that uninsured and underinsured motorist coverage is optional and may be requested in amounts as provided in section 1734.   *Id.*   Section 1734 states that coverage as provided in section 1731 may be issued in amounts equal to or less than the bodily injury liability limit if the same is requested in writing by the named insured.   75 Pa. C.S. § 1734.

In the absence of a valid § 1734 written request by the named insured, courts have applied the bodily injury limits as the available UIM coverage.[8]   *Resseguie*, 980 F.2d at 231; *Cook*, 155 F.

---

[8] This Court recognizes that other courts have questioned the availability of a remedy for a violation of § 1734.   In light of differences with the instant case, this Court does not consider these cases determinative.   The courts in *Buffetta* and *Nationwide Mut. Ins. Co. v. Heintz* both found the § 1734 writing requirement was satisfied, therefore, application of a remedy was unnecessary to the holdings of those cases.   *See Buffetta*, 230 F.3d at 641-42; *Nationwide Mut. Ins. Co. v. Heintz*, 804 A.2d 1209, 1220 (Pa. Super. 2002).   Similarly, the Pennsylvania Supreme Court in *Lewis* did not reach the issue of remedy for a violation of § 1734 as the issue presented only concerned whether the form for rejecting coverage under § 1731(c.1) applied to requests for reduction under § 1734. *Lewis*, 793 A.2d at 154 n.17.   Some courts cite two recent Pennsylvania Supreme Court decisions to support a finding that although insurers violated certain provisions of the MVFRL, the legislature did not provide for a remedy and none would be available to the insured.   *See Buffetta*, 230 F.3d at 638 (citing *Salazar v. Allstate Ins. Co.*, 702 A.2d 1038 (Pa. 1997); *Donelly v. Bauer*, 720 A.2d 447 (Pa. 1998)); *see also Heintz*, 804 A.2d at 1219-20.   In *Cebula v. Royal & Sunalliance Ins. Co.*, 158 F. Supp. 2d 455, 461 (M.D. Pa. 2001), Judge Munley considered available remedies for § 1734 and did not consider *Salazar* and *Donelly* applicable for two related reasons: neither case concerned § 1734;

App'x at 598; *Emig*, 664 A.2d 559.  These courts construed the
statutory requirements of the MVFRL to require bodily injury limits
in the absence of a valid request for reduction.  *Resseguie*, 980
F.2d at 231 (holding that an insurer's obligation to issue a policy
with UIM coverage equal to the bodily injury limit is not relieved
without a proper § 1734 request); *Cook*, 155 F. App'x at 598; *Emig*,
664 A.2d 559.  In *Resseguie*, the court held an insurer's obligation
to issue a policy with UIM coverage equal to the bodily injury
limit is not relieved without a proper § 1734 request.  *Resseguie*,
980 F.2d at 231; *see also Cook*, 155 F. App'x at 597 (citing
*Resseguie*); *Emig*, 664 A.2d 559 (citing *Resseguie*).

Applying the bodily injury limits, courts have reasoned the
result was supported by the policy consideration underlying the
MVFRL.  *Resseguie*, 980 F.2d at 231; *Cook*, 155 F. App'x at 598;
*Emig*, 664 A.2d 559.  The court in *Resseguie* explained the purpose
of UIM coverage is to protect the insured from inadequately insured
tortfeasors in an amount equal to the bodily injury limit the
insured carries to protect those whom he may injure.  *Resseguie*,
980 F.2d at 231.  In *Emig*, the court held that its application of §
1734 was the result of the mandate to interpret the MVFRL liberally

---

and neither case was overly broad in their holdings.  In *Cebula*,
the court also applied the bodily injury limit where a §1734
writing was not found.  *Cebula*, 158 F. Supp. 2d at 462.  In view of
the differences from the instant matter, this Court does not
believe *Salazar* and *Donelly* are dispositive of the issue presented
here.

in order to permit the greatest possible coverage.  *Emig*, 664 A.2d at 566.  *Emig* also noted, in any doubtful or close cases, the court must interpret the intent of the legislature to provide coverage for the insured.  *Id.*

The court in *Cook* confirmed the validity of *Emig* and *Resseguie*.[9]  *Cook*, 155 F. App'x at 597.  Importantly, *Cook* also noted the Pennsylvania Superior Court reaffirmed the principle that an insurer is obligated to issue a policy with UIM coverage in an amount equal to the bodily injury limits unless it received a valid request for lower limits.  *Cook*, 155 F. App'x at 598 (citing *Heintz*, 804 A.2d at 1216 n.7).  In *Cook*, the court held that absent a valid request the insured's alleged selection of UIM limits is a nullity and such coverage results in the bodily injury limit.  *Id.*

This Court is also guided by the Pennsylvania rules of statutory construction.  The rules provide in § 1922(2) that the legislature "intends the entire statute to be effective and certain."  1 Pa. C.S. § 1922(2).

Plaintiff argues that the amount of available UIM coverage per vehicle is $500,000.00 per vehicle.  (Doc. 37 at 7.)

Defendant counters that the UIM limit should be the bodily injury limit of $1,000,000.00.  (Doc. 36 at 12.)

Considering the relevant statutes, case law, and rules for statutory construction, this Court agrees with those courts holding

---

[9] *See supra* p. 23 n.6.

that when the request does not comport with the statutory requirements of § 1734, the amount of UIM coverage must equal the bodily injury liability limit. *See Resseguie*, 980 F.2d at 231; *Cook*, 155 F. App'x at 598; *Emig*, 664 A.2d 559.

This conclusion is also supported by the rules of statutory construction. The Pennsylvania legislature could not have intended that § 1734 did not require what it states it requires: A *named insured* may request *in writing* the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury. 75 Pa. C.S. § 1734 (emphasis added).

The MVFRL is to be interpreted liberally to provide the greatest coverage for the insured. *Emig*, 664 A.2d at 566. Section 1731(a) requires insurers to offer UIM coverage for every policy issued in the Commonwealth. 75 Pa. C.S. § 1731(a). Further, § 1731(a) provides that UIM coverage is to be offered in amounts as provided in § 1734. *Id.* Section 1734 provides that a named insured may request in writing UIM coverage equal to or less than the bodily injury limits. 75 Pa. C.S. § 1734. The greatest possible coverage allowed in § 1734 is the bodily injury limit. *Id.* Therefore, in keeping with the mandate that the MVFRL be interpreted liberally to afford the insured the most coverage allowed under the law, *Emig*, 664 A.2d at 566, the result of noncompliance with § 1734's writing requirement is available

coverage to the named insured in the amount of the bodily injury limit. *See Resseguie*, 980 F.2d at 231; *Cook*, 155 F. App'x at 598; *Emig*, 664 A.2d 559.

This Court agrees with Defendants, the available amount of UIM coverage in this case is equal to the bodily injury limit.

C.   <u>Motions for Summary Judgment (Holding).</u>

In consideration of the applicable standard for cross-motions for summary judgment in a declaratory action and the previous discussion by this Court, Plaintiff's motion seeking judgment that the available per vehicle UIM coverage should be in the amount of $500,000.00 is denied.

Based on the previous discussion, Defendants' motion seeking judgment that the per vehicle UIM coverage is equal to the bodily injury liability limit of $1,000,000.00 is granted.

**V.      CONCLUSION**

For the reasons discussed above, this Court finds the amount of underinsured motorist coverage available to Defendants is $1,000,000.00 per vehicle.  As this Court previously found Defendants were entitled to stack the underinsured motorist coverage for eight (8) vehicles, the total available underinsured motorist coverage amount is $8,000,000.00.  An appropriate Order follows.


S/Richard P. Conaboy

RICHARD P. CONABOY
United States District Judge

Dated: November 29, 2006

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


TRANSGUARD INSURANCE COMPANY   :
OF AMERICA, INC.,              :
                              :
        Plaintiff,            :        CIVIL ACTION NO. 05-CV-538
                              :
        v.                    :
                              :
MICHAEL HINCHEY and           :
SHARON HINCHEY, his wife,      :        (JUDGE CONABOY)
                              :
        Defendants.           :

ORDER

AND NOW this 29th day of November 2006, for the reasons set out in the accompanying Memorandum, it is hereby ordered that:

1. Plaintiff's cross-motion for summary judgment is DENIED;

2. Defendants' cross-motion for summary judgment is GRANTED;

3. Uninsured Motorist coverage per vehicle is $1,000,000.00 and the total available coverage after stacking is $8,000,000.00; and

4. The Clerk of Court is directed to close this case.




S/Richard P. Conaboy

RICHARD P. CONABOY
United States District Judge


31